## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **TYRONE A. WALTON** | : | **Case No. 1:20CV00976** |
| **3040 Temple Avenue, #35** | : | |
| **Cincinnati, Ohio 45211** | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| **vs.** | : | |
| | : | |
| **CINCINNATI STATE TECHNICAL** | : | |
| **AND COMMUNITY COLLEGE** | : | |
| **3520 Central Parkway** | : | |
| **Cincinnati, Ohio 45223** | : | |
| | : | |
| **Defendant.** | : | |

_____

### COMPLAINT AND JURY DEMAND
_____

Plaintiff Tyrone A. Walton, for his Complaint against Defendant, Cincinnati State Technical and Community College ("Cincinnati State"), states as follows:

### I.     PRELIMINARY STATEMENT

1.     This is a civil rights action arising out of Plaintiff Tyrone A. Walton's employment with Cincinnati State.  Mr. Walton alleges that he was a victim of discrimination and retaliation and was terminated because of his race.

2.     Mr. Walton's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Ohio Civil Rights Act.

3.     Mr. Walton seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for both his economic and non-economic injuries.  He also seeks punitive damages and equitable relief in the form of reinstatement or front pay, and an award of his reasonable attorney's fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

4.       The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by Title VII and 42 U.S.C. § 1981. This Court may assume supplemental jurisdiction over Mr. Walton's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as his federal claims.

5.       Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

6.       Plaintiff Tyrone A. Walton is a United States citizen and a resident of Hamilton County, Ohio.  Mr. Walton is African American.

7.       Defendant Cincinnati State is a community college located in Cincinnati, Ohio. Cincinnati State is an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act.

## IV. ADMINISTRATIVE HISTORY

8.       On March 31, 2019, Mr. Walton filed an administrative charge of discrimination against Cincinnati State with the Equal Employment Opportunity Commission ("EEOC") (473-2019-00555).  He alleged that Cincinnati State discriminated against him because of his race.  The EEOC issued a Notice of Right to Sue on September 4, 2020.  This action is brought within 90 days of the EEOC's issuance of that notice.

9.       On October 7, 2020, Mr. Walton filed a second administrative charge of discrimination against Cincinnati State with the EEOC (473-2021-00037).  He alleged that Cincinnati State discriminated against him because of his race and retaliated against him for protesting race discrimination.  The EEOC is investigating that charge of

discrimination and Mr. Walton will amend his Complaint upon receipt of his Notice of Right to Sue.

## V. STATEMENT OF THE CASE

10.     Cincinnati State hired Mr. Walton in or about March 1997 as a Custodian.

11.     Mr. Walton received exceptional performance reviews, raises, and promotions throughout his tenure at Cincinnati State.  In 2008, Cincinnati State promoted Mr. Walton to Environmental Services Manager.  And in or about 2011, Cincinnati State promoted Mr. Walton to the position of Facilities Field Manager, the second-most senior position in Cincinnati State's Physical Facilities Division.

12.     During his 23-year tenure at Cincinnati State, Mr. Walton took advantage of its employee education program.  Mr. Walton obtained his associates, bachelors, and master's degrees in business administration while employed at Cincinnati State.

13.     In or about June 2018, Dr. Lawra Baumann, Vice President of Administration at Cincinnati State, approached Mr. Walton about participating on a screening team to ultimately hire a candidate for the newly-created position of Director, Buildings, Grounds & Maintenance ("Director").

14.     Rather than participate on the screening committee, Mr. Walton informed Dr. Baumann that he intended to apply for the position.  Ultimately, Mr. Walton submitted an application for the Director position.

15.     Mr. Walton met or exceeded all of the objective qualifications necessary for the position.

16.     On June 15, 2018, Mr. Walton, along with four other candidates, were interviewed by a screening team.

17.     According to Cincinnati State's position statement to the EEOC, the screening team gave the highest score to Kim Vasko, a Caucasian woman.

18.     Ostensibly for that reason, Ms. Vasko was the only candidate interviewed by Dr. Monica Posey, President of Cincinnati State.   Dr. Posey ultimately hired her for the position.

19.     Ms. Vasko's objective qualifications for the position were inferior to those of Mr. Walton.

20.     By way of example, while Mr. Walton obtained a master's degree in business administration, Ms. Vasko had only an undergraduate degree.

21.     Moreover, while Mr. Walton had served as a Manager for ten years, Ms. Vasko served only as an interim Manager for less than a year.

22.     Additionally, Mr. Walton supervised Ms. Vasko from 2008 to 2011.

23.     Not only was Mr. Walton better qualified for the position than Ms. Vasko, to the best of his knowledge and belief, Mr. Walton was objectively the most qualified candidate in terms of his prior work history, education, and experience.

24.     Following Ms. Vasko's hire to the position of Director, Michael Mays, a participant on the screening committee, approached Mr. Walton and told him the decision to hire Ms. Vasko "did not sit right" with him.   More specifically, Mr. Mays informed Mr. Walton that the screening team failed to assign scores to any of the interviewees, in contradiction to standard screening team procedures.

25.     If true, the contention of Cincinnati State that the screening team assigned Ms. Vasko the highest score following the interviews was false.

26.     Mr. Mays further informed Mr. Walton that, contrary to normal procedures providing that the screening committee make a recommendation to the President for the

hire of a candidate, Dr. Baumann made the unilateral decision to recommend Ms. Vasko for the position.

27.     Over the next several months, it became clear to Mr. Walton that Ms. Vasko was not qualified for the position of Director.  Ms. Vasko regularly delegated her job responsibilities to Mr. Walton.

28.     Accordingly, on March 31, 2019, Mr. Walton filed an administrative charge of discrimination with the EEOC.  Mr. Walton alleged that Cincinnati State's decision to not promote him was discriminatory on the basis of his race.

29.     After Mr. Walton filed his first EEOC charge, Cincinnati State denied Mr. Walton the opportunity to participate in continuing training and education courses.

30.     Additionally, upon becoming his supervisor, Ms. Vasko prevented Mr. Walton from using any of his earned, accrued but unused vacation time.

31.     On March 25, 2020, Cincinnati State designated Mr. Walton an "essential employee" to aid in efforts to combat the spread of COVID-19 on campus, meaning he was one of a select group of employees who were deemed essential to the continued operation of the institution.

32.     Nevertheless, on May 1, 2020, Lawra Baumann, Vice President of Administration, sent Mr. Walton a letter notifying him that, due to financial exigency, Cincinnati State chose to eliminate his position effective May 15, 2020.

33.     Mr. Walton was the only employee in the Physical Facilities Division, consisting of over 20 employees, to have his position eliminated.

34.     The acts and/or omissions of Cincinnati State was taken or omitted intentionally, maliciously, and/or purposefully with a conscious and deliberate disregard for Mr. Walton's rights under federal and state civil rights laws to be free from acts of

discrimination in employment on account of race and retaliation for protesting acts of discrimination in the workplace.

35.    As a direct and proximate result of Cincinnati State's actions, Mr. Walton has suffered and will continue to suffer damages from lost income and benefits, emotional distress, and damage to his professional reputation.

## VI. STATEMENT OF CLAIMS

### Count 1: Race Discrimination (Termination)
### 42 U.S.C. § 2000e, 42 U.S.C. § 1981, & Ohio Rev. Code § 4112

36.    Plaintiff incorporates paragraphs 1 through 35 as if fully rewritten herein.

37.    Mr. Walton is African American.

38.    Mr. Walton was qualified for the position of Facilities Field Manager.

39.    Mr. Walton was treated less favorably than his white coworkers.

40.    The decision to terminate Mr. Walton was motivated in whole or in part by consideration of his race.

41.    As a result of the Defendant's actions, Mr. Walton suffered damages, including lost wages and emotional distress.

### Count 2: Retaliation (Termination)
### 42 U.S.C. § 2000e, 42 U.S.C. § 1981, & Ohio Rev. Code § 4112

42.    Plaintiff incorporates paragraphs 1 through 41 as if fully rewritten herein.

43.    Mr. Walton engaged in activity protected by Title VII when he opposed race discrimination by filing a claim of discrimination with the EEOC.

44.    Cincinnati State was aware of Mr. Walton's protected activity.

45.    There is a causal connection between Mr. Walton's complaints of racial discrimination and Cincinnati State's decision to terminate him.

46.    As a result of Cincinnati State's actions, Mr. Walton suffered damages, including lost wages and emotional distress.

### Count 3: Race Discrimination (Failure to Promote)
### 42 U.S.C. § 2000e, 42 U.S.C. § 1981, & Ohio Rev. Code § 4112

47.    Plaintiff incorporates paragraphs 1 through 46 as if fully rewritten herein.

48.    Mr. Walton is African American.

49.    Mr. Walton applied and was qualified for the position of Director, Buildings, Grounds & Maintenance.

50.    Despite the fact that Mr. Walton was objectively the most qualified candidate, Cincinnati State failed to promote him.

51.    Cincinnati State promoted Ms. Vasko, a less-qualified Caucasian candidate, to the position of Director.

52.    As a result of Cincinnati State's actions, Mr. Walton suffered damages, including lost wages and emotional distress.

### **PRAYER FOR RELIEF**

Wherefore, Mr. Walton demands judgment against Cincinnati State as follows:

1.    An award of compensatory damages for all economic damages suffered by Mr. Walton in an amount to be determined at trial;

2.    An award of compensatory damages for all non-economic damages suffered by Mr. Walton in an amount to be determined at trial;

3.    For an order reinstating Mr. Walton to his previous position at Cincinnati State, inclusive of all pay increases and benefits to which he would have been entitled had he not been terminated, or in the alternative, an award of front pay;

4.    For an award of punitive damages in an amount to be determined at trial;

5.　　For an award of Mr. Walton's reasonable attorney fees and costs;

6.　　For an award of any other relief in law or equity to which Mr. Walton is entitled under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Daniel J. Treadaway (OH No. 0098000)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Tyrone A. Walton*

**<u>JURY DEMAND</u>**

Plaintiff Tyrone A. Walton demands a jury trial to resolve all issues of fact related to his Complaint.

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)